```
           IN THE UNITED STATES DISTRICT COURT
           FOR THE NORTHERN DISTRICT OF TEXAS
                    FORT WORTH DIVISION
```

PHILLIP DWAIN SMITH,            §
                                §
          Petitioner,           §
                                §
v.                              §       No. 4:13-CV-257-Y
                                §
WILLIAM STEPHENS, Director,     §
Texas Department of Criminal    §
Justice, Correctional           §
Institutions Division,          §
                                §
          Respondent.           §

**OPINION AND ORDER**

Before the Court is a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 filed by Petitioner, Phillip Dwain Smith, a state prisoner, against William Stephens, director of the Texas Department of Criminal Justice, Correctional Institutions Division, Respondent. The prior referral to the Magistrate Judge is withdrawn.

After having considered the pleadings and relief sought by Petitioner, the Court has concluded that the petition should be denied.

## I. Factual and Procedural History

On November 4, 2010, in the 432nd Judicial District Court, Tarrant County, Texas, a jury found Petitioner guilty on one count of continuous sexual abuse of a child, two counts of aggravated sexual assault of a child younger than 14 years of age, and three counts of indecency with a child, for which the trial court

sentenced him to 60 years' confinement on each of the first three counts and 20 years' confinement on each of the remaining counts, the sentences to run concurrently.  (Js. of Conviction by Jury 164-82, ECF No. 22-3.)  Petitioner appealed his convictions, but the Second District Court of Appeals of Texas affirmed the trial court's judgments and the Texas Court of Criminal Appeals refused Petitioner's petition for discretionary review.  (Mem. Op. 184-91, ECF No. 22-3; PDR No. 1818-11.)  Petitioner also filed a state habeas application challenging his convictions, which was denied without written order by the Texas Court of Criminal Appeals on the findings of the trial court.  (State Habeas R. cover, ECF No. 22-2.)  This federal petition followed.

The state appellate court briefly summarized the facts of the case as follows:

> The victim, who was twelve years old at the time of trial, testified that [Petitioner] began touching her vagina when she was eight years old; first, he touched her over her clothes, and then he began putting his hand under her clothes.  He inserted his finger into her female sexual organ.  She testified that [Petitioner] would do this about once a week.  When she was nine-and-a-half years old, [Petitioner] began touching her on her breasts, too.  He did this every few days.  He would kiss her breasts.  He continued to insert his finger into her female sexual organ and to touch and kiss her breasts, and when she was ten years old and eleven years old, the frequency of [Petitioner]'s assaults increased to almost daily.

(Mem. Op. 186, ECF No. 22-3.)

## II.  Issues

In six grounds, Petitioner claims that he received ineffective

assistance of trial counsel (grounds one through five) and that the state engaged in malicious prosecution and slandered his integrity and character during closing argument (ground six).[1] (Pet. 6-7, ECF No. 1.)

III. Rule 5 Statement

Respondent asserts that Petitioner has sufficiently exhausted his state-court remedies as to the claims raised and that the petition is not barred by limitations or subject to the successive-petition bar. (Resp't's Answer 5, ECF No. 26.)

IV. Legal Standard for Granting Habeas-Corpus Relief

A § 2254 habeas petition is governed by the heightened standard of review provided for in the Anti-Terrorism and Effective Death Penalty Act (AEDPA). See 28 U.S.C. § 2254. Under the Act, a writ of habeas corpus should be granted only if a state court arrives at a decision that is contrary to or an unreasonable application of clearly established federal law as established by the Supreme Court or that is based on an unreasonable determination of the facts in light of the record before the state court. 28

---

[1] Respondent asserts Petitioner's claims are conclusory and should not be considered by this Court. (Resp't's Answer 9-10, ECF No. 26.) However, to the extent practical, Petitioner's claims, subject to any procedural default, are addressed. Furthermore, absent a showing of cause and prejudice or a miscarriage of justice, such showing not having been demonstrated by Petitioner, his attempts to raise claims for the first time in his reply brief and supplemental pleadings without leave of court, are futile. Such claims are unexhausted and procedurally barred. (Pet'r's Reply Br. 2-14 & Supp. Doc. 1-14, ECF Nos. 30, 33.) 28 U.S.C. § 2254(b)(1); *Smith v. Johnson*, 216 F.3d 521, 523-24 (5th Cir. 2000).

3

U.S.C. § 2254(d)(1)-(2); *Harrington v. Richter,* 131 S. Ct. 770, 785 (2011). This standard is difficult to meet but "stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings." *Harrington*, 131 S. Ct. at 786.

Additionally, the statute requires that federal courts give great deference to a state court's factual findings. *See Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000). Section 2254(e)(1) provides that a determination of a factual issue made by a state court shall be presumed to be correct. A petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003); *Williams v. Taylor*, 529 U.S. 362, 399 (2000).

Finally, when the Texas Court of Criminal Appeals denies relief in a state habeas-corpus application without written opinion, as in this case, it is an adjudication on the merits, which is also entitled to the presumption of correctness. *See Singleton v. Johnson*, 178 F.3d 381, 384 (5th Cir. 1999); *Ex parte Torres*, 943 S.W.2d 469, 472 (Tex. Crim. App. 1997). Under these circumstances, a federal court may assume the state court applied correct standards of federal law to the facts, unless there is evidence that an incorrect standard was applied. *See Townsend v.*

4

*Sain,* 372 U.S. 293, 314 (1963)[2]; *Catalan v. Cockrell,* 315 F.3d 491, 493 n.3 (5th Cir. 2002); *Valdez v. Cockrell,* 274 F.3d 941, 948 n.11 (5th Cir. 2001); *Goodwin v. Johnson,* 132 F.3d 162, 183 (5th Cir. 1997).

V.   Ineffective Assistance of Counsel

A criminal defendant has a constitutional right to the effective assistance of counsel at trial.  *See* U.S. Const. amend. VI, XIV; *Strickland v. Washington*, 466 U.S. 668, 688 (1984).  To establish ineffective assistance of counsel a petitioner must show (1) that counsel's performance fell below an objective standard of reasonableness, and (2) that but for counsel's deficient performance the result of the proceeding would have been different. *Strickland*, 466 U.S. at 688.  Both prongs of the *Strickland* test must be met to demonstrate ineffective assistance.  *Id.* at 687, 697.

Further, a court must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance or sound trial strategy.  *Id*. at 668, 688-89.  Judicial scrutiny of counsel's performance must be highly deferential and every effort must be made to eliminate the distorting effects of hindsight.  *Id.* at 689.

Finally, the Supreme Court recently emphasized in *Harrington*

---

[2]The standards of *Townsend v. Sain* have been incorporated into 28 U.S.C. § 2254(d).  *Harris v. Oliver*, 645 F.2d 327, 330 n.2 (5th Cir. 1981).

5

*v. Richter* the way that a federal court is to consider an ineffective-assistance-of-counsel claim raised in a habeas petition subject to AEDPA's strictures:

> The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland's* standard. Were that the inquiry, the analysis would be no different than if, for example, this Court were adjudicating a *Strickland* claim on direct review of a criminal conviction in a United States district court. Under AEDPA, though, it is a necessary premise that the two questions are different. For purposes of § 2254(d)(1), "an *unreasonable* application of federal law is different from an *incorrect* application of federal law." A state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself.

131 S. Ct. at 785 (quoting *Williams v. Taylor,* 529 U.S. 362, 410 (2000)). Accordingly, it is necessary only to determine whether the state courts' rejection of petitioner's ineffective-assistance claims was contrary to or an objectively unreasonable application of *Strickland*. See *Bell v. Cone,* 535 U.S. 685, 698-99 (2002); *Kittelson v. Dretke,* 426 F.3d 306, 315-17 (5th Cir. 2005); *Schaetzle v. Cockrell,* 343 F.3d 440, 443 (5th Cir. 2003).

Petitioner was represented at trial by Curtis L. Fortinberry and Lindsay Gilland. Petitioner claims counsel were ineffective by failing (1) to "do anything" when the trial court denied his pro-se motions for speedy trial and for an examining trial, resulting in lost opportunities to bring forward potential witnesses on his behalf; (2) to object to biased juror (juror number 28); (3) to put

on a defense and call "important fact witnesses," including an expert witness; (4) to suppress opinion testimony by the state's witnesses; and (5) to "challenge the weight of the evidence against the conviction" and to "suppress supposed evidence." (Pet. 6-7, ECF No. 1.) In the state habeas proceeding, lead-counsel Fortinberry, a licensed attorney since November 1994, responded to Petitioner's allegations as follows:

1. Petitioner's claim of ineffective assistance of counsel:

   Petitioner admits that his motions for an examining trial and for speedy trial were brought before the court with myself and co-counsel present. His argument is that we did not protest loudly enough when the judge "denied his rights" by denying his motion. I'm at a loss on how he wanted his counsel to "push the issues". Tarrant County has an open file policy, so Defense had all relevant documents. His Motion for Speedy trial was waived as it was not brought before the Court until after his first setting.

2. Petitioner's claim, that I did not object to juror #28.

   I moved to strike #28 for cause but after examination by the judge, my request was denied. I do not remember if juror number 28 ended up on the jury panel. However, if she did, it was because I believed that there were other venireman [sic] more essential to use our preremptory [sic] strike[s] on.

3. Petitioner's claim that we failed to put on a defense and call "important fact witnesses".

   All of the state's witnesses were cross-examined and weaknesses were found in each of their testimonies.

7

> There were NO fact witnesses that could say that over the period of years he was accused of molesting the victim, that not one incident ever happened.
>
> There were two witnesses on the police report, not the 5-7 as claimed by Petitioner. Both testified for the State and were cross-examined by me and were not helpful to Petitioner's defense[.]
>
> 4. Petitioner's claim that we failed to suppress the D.A. evidence, i.e. the Medical Examiner's theory, the Detective's investigation and the "other 5 witnesses["].
>
> I objected to each and every item of evidence and testimony that I believed, in my professional opinion was objectionable. Some were sustained and some were overruled.
>
> 5. Petitioner's claim of inadmissible hearsay.
>
> Petitioner is stating "inadmissible hearsay" and says I failed to challenge the weight of the evidence and failed to suppress evidence. I objected to each portion of each of the State's witnesses, that in my professional opinion were hearsay, again some were sustained and some were overruled. I did not ask the court to suppress the SANE nurse[']s testimony, nor the detectives['], nor the witnesses['], as I had no legal grounds to do so.
>
> The weight of the evidence against Petitioner was strong. All witnesses for the State were vigorously cross[-]examined. Contrary to Petitioner's claim, there were no fact witnesses that could repudiate even one instance regarding the charges against Petitioner. Petitioner[']s defense was strong and effective. I strongly object to each and every charge Petitioner was [sic] made against myself and Ms. Gilland.

(Aff. 117-18, ECF No. 22-3.)

Counsel Gilland also responded to Petitioner's allegations by

8

affidavit, wherein she averred:

> I began working for Curtis Fortinberry in early August of 2010. He was appointed on this case and I sat second chair. I was in my first year of practice at the time of trial. I will have been practicing three years this December. From what I remember from this trial, I was responsible for cross-examining the child witness and I was responsible for the punishment phase.
>
> As to the motion for examining trial, I was still employed at another law firm at that time. The motion was filed on July 20, 2010. From the documents attached to the writ, it looks like the case was indicted on July 27, 2010.
>
> Mr. Phillip Smith was arrested on July 6, 2009. Mr. Smith's trial began in September of 2010, approximately a year and two months later.
>
> As to ground two of Mr. Smith's claim, I don't remember but I believe Mr. Fortinberry moved to strike Juror #28 for cause; however, I believe the juror was questioned by the Court and the Court denied the strike for cause. I do not remember if juror number 28 ended up on the jury panel. However, if she did, it was because we believed that there were other venireman [sic] more essential to use our preremptory [sic] strike[s] on.
>
> As to ground three, Mr. Smith never informed me or Mr. Fortinberry of any witnesses to call in the punishment phase of his trial or in the case in chief. I remember that the client's mother was in the courtroom. I do not believe we called her as a witness.
>
> As to the claim of not calling witnesses named in the police report, all witnesses listed in the police report were adverse to our client and were either witnesses accusing him of sexual assault or indecency with a child such as [S.C.] the child victim, Linda Staggs, her mother, Mr. Bridges, an adverse witness, Mr. Bazan, an adverse witness, or police officer or detectives.
>
> As far as the fourth ground in Mr. Smith's writ, I do not believe the evidence in this case could have been suppressed. As far as the testimony of the SANE nurse, she testified that there were no physical findings and that was consistent with the kind of abuse alleged.

9

> However, the fact that there were no physical findings was actually favorable to Mr. Smith's case. The detectives who testified were testifying to their interview of him, of which a video was shown to the jury. The other witnesses were police officers involved in the case and witnesses Gregory Bridges and Charles Bazan who witnessed Mr. Smith and [S.C.] kissing about a month before his arrest. Also Ms. Perez the property manager testified about inappropriate behavior she had seen between [S.C.] and Mr. Smith.
>
> As far as ground five, Mr. Fortinberry challenged the weight of the evidence during our cross-examination of the witnesses. I challenged [S.C.]'s credibility by questioning her about why she never reported the abuse to her mother, friends or anyone else.

(Aff. 115-16, ECF No. 22-3.)

Based on counsel's affidavits, the documentary record, and his own personal recollections of counsel's actions during the trial proceedings, the state habeas judge entered the following findings of fact:

> . . .
>
> 7. Mr. Fortinberry and Ms. Gilland had access to the State's files through the Tarrant County ECFS.
>
> 8. Mr. Fortinberry and Ms. Gilland reviewed the police reports regarding the case against the applicant.
>
> 9. The witnesses named in the police reports were all adverse to the applicant's defense.
>
> 10. The applicant did not provide Mr. Fortinberry or Ms. Gilland with the names of any potential witnesses for the guilt/innocence or the punishment phase of his trial.
>
> 11. Mr. Fortinberry and Ms. Gilland conducted a reasonable investigation on the applicant's behalf.
>
> 12. Based upon the police reports, Mr. Fortinberry concluded that the best defense was the lack of

        third-party witnesses to the alleged molestation and to vigorously cross-examine the State's witnesses.

13. Mr. Fortinberry's defense tactic was reasonable trial strategy.

14. The applicant filed a pre-trial application for writ of habeas corpus on August 28, 2009, in which he alleges that he filed a request for an examining trial on July 20, 2009.

15. The criminal docket does not show that any request for an examining trial was filed on July 20, 2009.

16. The applicant was indicted on July 27, 2009.

17. The applicant's right to an examining trial was terminated by his indictment.

18. Any post-indictment assertion of applicant's request for an examining trial by Mr. Fortinberry or Ms. Gilland would have been frivolous.

19. The applicant filed a pre-trial application for writ of habeas corpus on September 9, 2009, alleging that he was entitled to release due to delay by the State.

20. The State filed its announcement of ready on July 27, 2009.

21. The applicant has no right to release under Code of Criminal Procedure article 17.151 if the State has announced that it is ready for trial.

22. Any post-announcement assertion of the applicant's request for release by Mr. Fortinberry or Ms. Gilland would have been frivolous.

23. Mr. Fortinberry and Ms. Gilland did not move to suppress the testimony of Rebecca Sullivan, the forensic nurse who examined S.C., because they did not believe there was a legal ground to suppress her testimony.

24. Mr. Fortinberry and Ms. Gilland believed that Ms. Sullivan's testimony was favorable to the defense

11

      because there was no physical findings.

25. The decision by Mr. Fortinberry and Ms. Gilland not to seek suppression of Ms. Sullivan's testimony was reasonable trial strategy.

26. Mr. Fortinberry and Ms. Gilland did not move to suppress the remaining witnesses because they believed that there were no legal grounds to suppress their testimony.

27. The decision by Mr. Fortinberry and Ms. Gilland not to seek suppression of the remaining witnesses' testimony was reasonable trial strategy.

28. Mr. Fortinberry and Ms. Gilland reasonably prepared for the applicant's trial.

29. Venire member #28 informed the trial court that she had been sexually assaulted when she was fifteen.

30. Venire member #28 assured the trial court that she could be fair and impartial to both the applicant and the State.

31. Venire member #28 was not challengeable for cause.

32. Any challenge to venire member #28 by Mr. Fortinberry or Ms. Gilland would have been frivolous.

33. Mr. Fortinberry reasonably conducted voir dire on the applicant's behalf.

34. Mr. Fortinberry and Ms. Gilland fully cross-examined the State's witnesses.

35. Mr. Fortinberry and Ms. Gilland made the proper and necessary objections during applicant's proceedings.

36. Mr. Fortinberry and Ms. Gilland did not move for an instructed verdict when the State rested its case.

37. The decision by Mr. Fortinberry and Ms. Gilland not to request an instructed verdict was a matter of reasonable professional judgment.

38. Mr. Fortinberry and Ms. Gilland fully defended the applicant during his trial.

39. The following evidence undercuts any likelihood that the outcome of this case would have been different with another counsel or if Mr. Fortinberry and Ms. Gilland had represented the applicant in another manner;

   a. The applicant began touching S.C.'s vagina when she was eight years old.

   b. The applicant began by first touching S.C. over her clothes, and then putting his hand under her clothes.

   c. The applicant inserted his finger into S.C.'s female sexual organ.

   d. S.C. testified that these assaults occurred about once a week.

   e. When S.C. was nine-and-a-half years old, the applicant began touching and kissing her on her breasts.

   f. The applicant continued to insert his finger into S.C.'s female sexual organ.

   g. When S.C. was ten and eleven years old, the applicant increased the frequency of his assaults to almost daily.

   h. The evidence established hundreds of finger-vaginal penetrations and hundreds of hand-breast and oral-breast contacts by the applicant.

41. Given the evidence, there is no reasonable probability that the jury would have reached a different result or verdict with counsel other than Mr. Fortinberry and Ms. Gilland.

(Findings of Fact 140-44, ECF No. 22-3 (record references omitted)).

Based on its findings, and applying the *Strickland* standard

13

and relevant state law, the habeas court entered the following legal conclusions:

10. The applicant's right to an examining trial was terminated by his indictment.

11. The applicant has no right to release under Code of Criminal Procedure article 17.151 if the State has announced that it is ready for trial.

12. Counsel is not required to make frivolous objections.

13. Mr. Fortinberry and Ms. Gilland properly did not pursue the applicant's post-indictment request for an examining trial or his post-announcement request for release.

14. Mr. Fortinberry and Ms. Gilland properly did not seek to suppress admissible evidence.

15. Mr. Fortinberry and Ms. Gilland fully and adequately prepared for the applicant's trial.

16. Mr. Fortinberry reasonably conducted voir dire on the applicant's behalf.

17. Venire member #28 was not challengeable for cause since she assured the trial court that she could be fair and impartial to the applicant and to the State.

18. Mr. Fortinberry and Ms. Gilland fully defended the applicant during his trial.

19. Mr. Fortinberry and Ms. Gilland properly did not seek a motion for instructed verdict.

20. Mr. Fortinberry and Ms. Gilland functioned as counsel guaranteed by the Sixth Amendment.

21. The applicant has failed to show that there is a reasonable probability that, but for the alleged acts of misconduct, the result of his trial would have been different.

22. The applicant received effective assistance of

trial counsel.

(Conclusions of Law 144-47, ECF No. 22-3.)

Petitioner has failed to rebut the state court's findings of fact by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1). Thus, the findings, including the court's credibility findings, are entitled to a presumption of correctness. *Richards v. Quarterman*, 566 F.3d 553, 563-64 (5th Cir. 2009); *Galvan v. Cockrell*, 293 F.3d 760, 764 (5th Cir. 2002). Deferring to those findings, and having independently reviewed petitioner's claims in conjunction with the state-court records, it does not appear the state courts' application of *Strickland* was objectively unreasonable.

Petitioner's claims are largely conclusory, as noted by Respondent, with no legal and/or evidentiary basis; are refuted by the record; involve state evidentiary rulings or other matters of state law, or involve strategic and tactical decisions made by counsel, all of which generally do not entitle a state petitioner to federal habeas relief. *See Swarthout v. Cooke*, 562 U.S. 216, 861 (2011) (reinforcing that "federal habeas corpus relief does not lie for errors of state law"); *Strickland,* 460 U.S. at 689 (holding strategic decisions by counsel are virtually unchallengeable and generally do not provide a basis for post-conviction relief on the grounds of ineffective assistance of counsel); *Johnson v. Cockrell*, 306 F.3d 249, 255 (5th Cir. 2002) (concluding that counsel is not required to make futile motions or objections); *Johnson v. Puckett*,

15

176 F.3d 809, 820 (5th Cir. 1999) ("State evidentiary rulings do not warrant federal habeas relief unless they violate a specific constitutional right or render the trial so fundamentally unfair as to violate due process."); *Green v. Johnson*, 160 F.3d 1029, 1042 (5th Cir. 1998) ("Mere conclusory allegations in support of a claim of ineffective assistance of counsel are insufficient to raise a constitutional issue."); *Alexander v. McCotter*, 775 F.2d 595, 602 (5th Cir. 1985) (ineffective assistance claims "based upon uncalled witnesses [are] not favored because the presentation of witness testimony is essentially strategy and thus within the trial counsel's domain, and . . . speculations as to what these witnesses would have testified [to] is too uncertain"). Petitioner has not demonstrated deficient performance or shown any reasonable probability that the outcome of his trial would have been different but for counsel's representation. A petitioner shoulders a heavy burden to overcome a presumption that his counsel's conduct is strategically motivated, and to refute the premise that "an attorney's actions are strongly presumed to have fallen within the wide range of reasonable professional assistance." *Messer v. Kemp*, 760 F.2d 1080, 1090 (11th Cir. 1985). Petitioner has presented no evidentiary, factual, or legal basis in this federal habeas action that could lead the Court to conclude that the state courts unreasonably applied the standards set forth in *Strickland* based on the evidence presented in state court. 28 U.S.C. § 2254(d).

16

Accordingly, Petitioner is not entitled to relief under grounds one through five.

VI.  Malicious Prosecution, Slander and Malice

Under his final ground, Petitioner claims that the state engaged in malicious prosecution and slandered his integrity and character and inflamed the minds of the jurors by calling him an "odious, repellant creature" during closing argument. (Pet. 7, ECF No. 1; Reporter's R., vol. 6, 72, ECF No. 14-11.)  Petitioner's malicious-prosecution claim is a tort claim and cannot be addressed in this habeas action.  If petitioner wishes to raise such a claim, he must pursue it in a separate lawsuit.  Further, the state habeas court recommended denial of his jury-argument claim because the claim is not cognizable on state habeas review and because it could have been but was not raised on direct appeal and was, thus, procedurally barred.  (Writ of Habeas Corpus 148, ECF No. 22-3.) Under the procedural-default doctrine, a federal court may not consider a state prisoner's federal habeas claim when the last state court to consider the claim expressly and unambiguously based its denial of relief on an independent and adequate state procedural default. *Coleman v. Thompson,* 501 U.S. 722, 729 (1991); *Johnson v. Puckett,* 176 F.3d 809, 823 (5th Cir. 1999); *Fisher v. State,* 169 F.3d 295, 300 (5th Cir. 1999).  The state court clearly relied upon firmly established and regularly followed state procedural rules to recommend denial of this claim, which

17

represents an adequate state procedural bar to federal habeas review. *Ex parte Gardner,* 959 S.W.2d 189, 199 (Tex. Crim. App. 1996) (holding Fifth Amendment claim is procedurally defaulted because not raised on direct appeal); *Ex parte Banks,* 769 S.W.2d 539, 540 (Tex. Crim. App. 1989) (holding "the Great Writ should not be used to litigate matters which should have been raised on appeal"). Therefore, absent a showing of cause and prejudice or a miscarriage of justice, such showing not having been demonstrated by Petitioner, his sixth ground is procedurally barred from this Court's review.

## VII.  Conclusion

Based on the record before the Court, the state courts' rejection of Petitioner's claims is not contrary to, no does it involve an unreasonable application of, clearly established federal law as established by the Supreme Court nor was the decision based on an unreasonable determination of the facts in light of the evidence presented in the state court.

For the reasons discussed, the Court DENIES Petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 and DENIES a certificate of appealability.

SIGNED September 30, 2014.

*Terry R. Means*
TERRY R. MEANS
UNITED STATES DISTRICT JUDGE